UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GORDON QUICK, WILLIAM MCCAUSLAND, and JOHN TRECKER, </br></br>　　　Plaintiffs, </br></br>　vs. </br></br>FORMULA TELECOM, INC., MICHAEL HUBER, and QUADRANGLE GROUP, LLC, </br></br>　　　Defendants. | Case No. 4:10CV01699 JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Formula Telecom, Inc.'s Motion to Dismiss Counts I, IV, and VII (Doc. No. 2) and the Motion to Dismiss of Defendants Michael Huber and Quadrangle Group (Doc. No. 19). These matters are briefed and ready for disposition.

## BACKGROUND

On December 5, 2005, Formula Telecom, Inc. ("FTS") executed a stock purchase agreement whereby it purchased the outstanding stock of Viziqor Solutions, Inc. from Woodmont Holdings, Inc. f/k/a Viziqor Holdings, Inc. f/k/a Daleen Holdings, Inc. ("Holdings") for a purchase price of $2.0 million. (Settlement Agreement By and Between the Chapter 7 Trustee, Formula Telecom Solutions, Ltd. and Viziqor Solutions, Inc. n/k/a Formula Solutions, Inc. ("Settlement Agreement"), Doc. No. 11-1, p. 1; Plaintiffs' Memorandum in Opposition to Defendant Formula Telecom, Inc.'s Motion to Dismiss ("Response"), Doc. No. 11, pp. 2, 4). The stock purchase agreement provided that $1.0 million of the purchase price was to be placed in an escrow account to be used by Holdings to indemnify FTS or Viziqor Solutions, Inc. for certain agreed liabilities, losses and expenses. (Id., pp.

1-2). Holdings, filed for bankruptcy protection under Chapter 7 of the Bankruptcy Act on March 13, 2006, in the District Court of Delaware.[1] Neither FTS nor Solutions filed for bankruptcy protection.

Plaintiffs Gordon Quick, William McCausland, and John Trecker (collectively, "Plaintiffs") filed a three count Petition in the Circuit Court of St. Louis County ("state lawsuit") on March 3, 2006, against Viziqor Solutions n/k/a FTS, Woodmont Holdings, Inc. f/k/a/ Viziqor Holdings, Inc., Michael Huber, and the Quadrangle Group, LLC ("Quadrangle"). In their Petition, Plaintiffs assert claims for breach of their employment contracts against Viziqor Solutions, Inc. ("Solutions") and alleged that Solutions was the alter ego of Viziqor Holdings, Inc.[2] On or around April 6, 2006, the bankruptcy trustee filed a Suggestion of Bankruptcy and Notice of Automatic Stay in connection with the Holdings bankruptcy, and Plaintiffs dismissed Holdings from the state lawsuit, without prejudice, on or about April 12, 2006. On April 14, 2006, defendants Huber and Quadrangle removed the state lawsuit to federal court.[3] FTS filed a Motion to Dismiss on May 3, 2006. On February 12, 2007, the District Court denied FTS's motion to dismiss but transferred the case to the Delaware Bankruptcy Court.[4] On November 4, 2009, Plaintiffs dismissed their claims in the adversary proceeding (the original state lawsuit claims). On August 17, 2010, the Holdings bankruptcy case was closed. On September 13, 2010, Plaintiff filed the current action.

---

[1]Case No. 06-10236-MFW.

[2]According to the Complaint, the only assets and business purpose of Viziqor Holdings, Inc was ownership of Viziqor Solutions, Inc. stock. (Complaint ("Compl."), Doc. No. 1, ¶11).

[3]Case No. 06CV-00637 SNL.

[4]This Court can take judicial notice of the bankruptcy proceedings. See Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (taking judicial notice of default judgment issued in separate bankruptcy court action and noting that this Court "may take judicial notice of judicial opinions and public records"); Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'").

In the current action, Counts I, IV and VII are breach of contract claims of each Plaintiff against FTS as the alter ego of Holdings. Counts II, V and VIII are breach of contract claims against Quadrangle. Counts III, VI and IX are fraud claims against Huber and Quadrangle.

## DISCUSSION

### I. Formula Telecom's Motion to Dismiss

Once a bankruptcy case is filed "all legal or equitable interests of the debtor in property as of the commencement of the case" become the property of the bankruptcy estate. 11 U.S.C. §541(a)(1). The bankruptcy trustee is the successor to the debtor's interests included as property of the estate. 11 U.S.C. §541. "The Bankruptcy Act vests in the bankruptcy trustee broad power to manage the affairs of the debtor." Citibank, N.A. v. Andros, 666 F.2d 1192, 1195 (8th Cir. 1981).

All of Plaintiffs' claims relate to employee agreements or retention bonuses executed between Plaintiffs and Holdings. Plaintiffs' theory of liability against FTS is that FTS is the alter ego of Viziqor Holdings (n/k/a Woodmont Holdings, which filed for bankruptcy). (Compl., ¶¶14, 28, 46, 47, 65, 66). FTS claims that it is entitled to dismissal for several reasons. FTS claims that as a result of Plaintiffs' claim that Solutions n/k/a FTS is the alter ego of Holdings which recently emerged from bankruptcy, this Court lacks subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). FTS also asserts that Plaintiffs fail to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). Finally, FTS claims that the trustee is an indispensable party and this case cannot continue without him pursuant to Fed.R.Civ.P. 12(b)(7). FTS asserts that the bankruptcy trustee is a required party under Fed.R.Civ.P. 19(a)(1).[5] "The proponent of a motion to dismiss under Fed.R.Civ.P. 12(b)(7) has

---

[5]Under that rule, joinder of any person subject to service of process whose presence will not destroy a court's subject matter jurisdiction is required if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that

the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." De Wit v. Firstar Corp., 879 F.Supp. 947, 992 (N.D. Iowa 1995)(citations omitted).

Specifically, FTS asserts that Plaintiffs' claims cannot be litigated outside of the bankruptcy proceedings. (Defendant Formula Telecom, Inc.'s Reply to Plaintiffs' Opposition to Motion to Dismiss ("FTS Reply"), Doc. No. 16, p. 5). The bankruptcy trustee, not the defendants, was charged with collecting assets and creating an estate for payments of claims against Holdings. (Defendant Formula Telecom, Inc.'s Memorandum in Support of Motion to Dismiss ("FTS Memorandum"), Doc. No. 3, pp. 3-4). Likewise, only the bankruptcy trustee could pursue Plaintiffs' claim against FTS under the alter ego theory. (FTS Reply, p. 5). Accordingly, the bankruptcy trustee, which stands in the shoes of Holdings, must be a party to any claim against Holdings.

In response, Plaintiffs assert that the bankruptcy trustee made the settlement payment to FTS in consideration for FTS's liability for the claims of Holdings, such as Plaintiffs' lawsuit. Plaintiffs assert that, pursuant to the bankruptcy action, FTS was a creditor of Holdings, seeking to be paid to indemnify FTS against Plaintiffs' claims. (Response, p. 3). The bankruptcy trustee, Holdings and FTS entered into the settlement agreement that provided that FTS would receive $822,000 of the escrow.[6]

---

disposing of the action in the person's absence may:

   (I) as a practical matter impair or impede the person's ability to protect the interest; or

  (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

[6]The Settlement Agreement provided that FTS would receive $822,000, which was $895,000 less the FTS portion of "the Dickinson/Espinos Settlement". (Response, p. 3).

(Id., pp. 3-4). Plaintiffs assert that FTS took on the liability for Plaintiffs' claims in consideration for receiving $822,000. (Id.).

The Court finds that Plaintiffs' claims fail as a matter of law because they did not include the bankruptcy trustee in the litigation. Plaintiffs' claims against Holdings existed prior to Holdings filing its petition in bankruptcy. Upon Holdings filing its petition in bankruptcy, Plaintiffs' claims became property of the bankrupt estate. See 11 U.S.C. §541(a)(1). FTS also included Plaintiffs' state lawsuit as one of the claims it may be liable for on behalf of Holdings. (Response, pp. 3, 6). Likewise, Plaintiffs filed claims in bankruptcy for the exact claims asserted herein. (Response, p. 4; FTS Reply, p. 6). Plaintiffs even received payment for their claims from the bankruptcy estate, but Plaintiffs assert that these distributions "were substantially less than the total amount of their claims." (Id.). In this lawsuit, Plaintiffs seek further payment for their claims from FTS as an alter ego of Holdings. (Response, p. 4). Holdings, however, has been replaced by the trustee in bankruptcy. See Steyhr Daimler Puch of Amer. v. Pappas, 35 B.R. 1001, 1004 (E.D. Va. 1983).[7] If this Court were to find that FTS is an alter ego of Holdings, then the Court would also have to find that FTS's assets are indistinguishable from the assets of Holdings. Id., at 1003. This litigation cannot proceed without the participation of the bankruptcy trustee and outside the bankruptcy court. See 11 U.S.C. § 727(a)(1) ("The court shall grant the debtor a discharge, unless (1) the debtor is not an individual"). This Court cannot adequately adjudicate this claim without the participation of Holdings/the bankruptcy trustee and dismisses Plaintiffs' claim for failure to join an indispensable party. The Court

---

[7]Plaintiffs attempt to distinguish this case because in Steyhr there was an open case in bankruptcy, but that the bankruptcy case for Holdings is closed. (Response, p. 8). The Court notes that Plaintiffs filed a claim in the Holdings bankruptcy case but later dismissed their claims to pursue them in the state lawsuit. Plaintiffs cannot avoid litigating their claims in the bankruptcy court simply by dismissing and refiling their action as an alter ego claim.

also denies Plaintiffs' Motion for an Asset Freezing Preliminary Injunction to Prohibit Removal of Formula Telecom's Assets from the United States (Doc. No. 17) as moot.

## II. Motion to Dismiss of Defendants Michael Huber and Quadrangle Group

Pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), Defendants Michael Huber ("Huber") and Quadrangle Group, LLC ("Quadrangle") move this Court to dismiss Plaintiffs' claims against them for breach of contract and common law fraud (Counts II, III, V, VI, VIII and IX). Plaintiffs allege breach of contract claims against Quadrangle (Counts II, V and VIII) and common law fraud claims against Huber and Quadrangle (Counts III, VI and IX).

### A. Background

Plaintiff Quick entered into an Employment Agreement with Daleen Holdings, Inc. (Doc. No. 1-4, p. 1). Daleen Holdings became Viziqor Holdings, Inc. ("Holdings"). (Memorandum in Support of Motion to Dismiss of Defendants Michael Huber and Quadrangle Group, LLC ("Memorandum"), Doc. No. 20, p. 2). Plaintiffs McCausland and Trecker entered into written Employment Agreements with Holdings. (Compl., ¶¶12-13).[8] Plaintiffs entered into a written Retention Bonus Agreement with Holdings whereby Plaintiffs were to continue their employment while Solutions was sold and Plaintiffs were to receive a bonus "out of the gross proceeds of the sale of Solutions." (Compl., ¶¶16-19). Plaintiffs allege claims for breach of contract against Quadrangle and for fraud against Quadrangle and Huber. These claims seek benefits due under the Employment Agreement and retention bonuses under the Retention Bonus Agreements.

### B. Breach of Contract (Counts II, V, and VIII)

---

[8]Plaintiffs assert Holdings was an alter ego of Solutions. (Compl., ¶¶14, 28, 46, 47, 65, 66).

Plaintiffs allege that Quadrangle breached a verbal agreement to guarantee the obligations of their employer, Holdings, and a subsidiary of Holdings, Viziqor Solutions, Inc. ("Solutions"). Quadrangle asserts that the claims for breach of a verbal guarantee are barred by the Missouri Statute of Frauds and because they fail to state a claim for which relief can be granted.

1.   Statute of Frauds

Plaintiffs allege that Quadrangle agreed to be responsible to pay each Plaintiff "all amounts due and owing him under his initial Employment Agreement, including severance and Retention Bonus Agreement in the event that Holdings/Solutions was sold and Plaintiff was discharged without there being funds to pay the compensation owed him. Quadrangle guaranteed the contractual performance of Holdings/Solutions." (Compl., ¶¶31, 50, 69).[9] Plaintiffs also assert that their breach of contract claim falls within one of several exceptions to the statute of frauds, full performance. Quadrangle states that Plaintiffs' breach of contract claims fail because the alleged verbal agreement does not satisfy the statute of frauds. (Memorandum, pp. 3-4).

a.   Legal Standard

The Missouri Statute of Frauds provides, in pertinent part,

> No action shall be brought ... to charge any person upon any special promise to answer for the debt, default or miscarriage of another person, ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized...

Mo.Rev.Stat. §432.010. The Court will enforce an oral contract if 1) the contract is definite; 2) it is proved as pleaded; 3) it is established by recent, definite conversations; 4) it is fair; 5) the proof leaves no reasonable doubt that the contract was made and full performance, as far as possible, has been had;

---

[9]Plaintiffs refer to Holdings/Solutions as one entity under an alter ego theory.

6) the performance is referable solely to the contract; 7) the contract is based upon adequate consideration; and 8) a real contract, rather than a mere disposition to agree, is shown. Holt v. Story, 642 S.W.2d 394, 396 (Mo. Ct. App. 1982) (citing Burgess v. Wright, 565 S.W.2d 854, 856 (Mo. Ct. App. 1978)). "The equitable exceptions 'generally fall into three broad categories: (a) to prevent perpetration of a fraud by application of the bar of the statute; … (b) by application of promissory estoppel; … [and] (c) where there has been partial or full performance.'" Piazza v. Combs, 226 S.W.3d 211, 223 (Mo. Ct. App. 2007) (quoting Mika v. Central Bank of Kansas City, 112 S.W.3d 82, 88-89 (Mo. Ct. App. 2003).(citations omitted)). "'All three categories are somewhat related and generally can be said to be used to prevent fraud or gross injustice.'" (Id.).

    b.  Analysis

Plaintiffs assert that their breach of contract claim should not be dismissed because their claim falls within the exception under the statute of frauds for full performance. "If plaintiffs completely performed, the statute of frauds will not bar recovery on their action at law for breach of contract." Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc., No. 04-3421, 2006 U.S. Dist. LEXIS 92333, at *10-11 (W.D. Mo. Dec. 21, 2006) (citing Koman v. Morrissey, 517 S.W.2d 929, 935-36 (Mo. 1975)); Lederle v. Lederle, 916 S.W.2d 423, 429 (Mo. Ct. App. 1996) ("The statute of frauds is not applicable to contracts which have been fully performed by one of the parties.")

    c.  Performance Not Solely Referable to Oral Guarantee

In response, Quadrangle argues that the alleged oral contract is not solely referable to the oral contract. Quadrangle asserts that for Plaintiffs to qualify for the exception under the Statute of Frauds, Plaintiffs must have had no other reason to stay at their jobs, other than the alleged promises in the oral contract. (Reply Memorandum in Support of Motion to Dismiss of Defendants Michael Huber and Quadrangle Group, LLC ("Reply"), Doc. No. 26, p. 5). Quadrangle claims that Plaintiffs continued to work at their positions in order to continue to receive their current salaries and bonuses from

Holdings, to maximize their chances of receiving severance and retention benefits from Holdings, and to enhance their future employment opportunities. (Reply, p. 11).

Quadrangle's argument, however, is an issue of fact for the jury. In fact, all of the cases cited by Quadrangle for this proposition are the result of a trial and an evaluation of the evidence. (Reply, pp. 10-11); see Poole v. Campbell, 289 S.W.2d 25 (Mo. 1956) (chancellor's judgment after the testimony of several witnesses; court held it was more likely that the contract was for the sale of property, not merely to re-convey the property back to the original owners); Lederle, 916 S.W.2d at 429 (bench trial; wife failed to prove her performance was solely referable to the terms of the alleged agreement; "Wife's assumption of the additional responsibilities of management and operation of her husband's business could just as reasonably be explained with reference to the marital relationship, ... and the increase in pay she received."); Gegg v. Kiefer, 655 S.W.2d 834 (Mo. Ct. App. 1983)(court tried judgment; tenant performed services consistent with his obligations under the landlord-tenant agreement as with the expectation that he would receive the decedent's farm pursuant to an alleged oral agreement).

### d. Adequacy of Consideration

Plaintiffs allege that they changed their positions in reliance of Quadrangle's promises, specifically by remaining employed by Quadrangle. (Compl., ¶¶ 32, 51, 70). Defendants, in turn, assert that Plaintiffs "put themselves in no worse position by staying employed by Holdings for an additional five or six months and continuing to run Solutions." (Reply, p. 8). Although adequacy of consideration is a question of law for the Court,[10] this Court cannot make this determination on a motion to dismiss. Defendants refer to facts outside of the pleadings to make their argument that "Quadrangle received no real benefit from [P]laintiffs' continued employment." (Reply, p. 9). The

---

[10]Holt, 642 S.W.2d at 396 (citing Vondras v. Titanium Research & Development Co., 511 S.W.2d 883, 886 (Mo. Ct. App. 1974)).

Court cannot hold that Plaintiffs' continued employment neither harmed Plaintiffs nor benefitted Quadrangle. The Court will not dismiss Plaintiffs' claims for breach of contract for failure to plead adequacy of consideration.

Accordingly, the Court denies Quadrangle's Motion to Dismiss based upon the Statute of Frauds. Quadrangle, however, also asserts that Plaintiffs' breach of contract allegations fail to state a claim under Fed.R.Civ.P. 12(b)(6).

      2.      Failure to State a Claim

          a.      Standard

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 78 S. Ct. 99 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp., 550 U.S. at 555; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

          b.      Analysis

Quadrangle claims that Plaintiffs' Complaint fails to state a claim for breach of contract because it does not allege that the bankruptcy court made a determination regarding the validity and amount of Holdings' obligations to pay Plaintiffs severance benefits and retention bonuses they seek from Quadrangle here. (Reply, p. 11). Quadrangle asserts that for it to be liable on a guaranty, Holdings must have been found liable for the underlying debt in the bankruptcy court.

Plaintiffs claim that they are not required to allege "a factual reference to the bankruptcy proceeding." (Plaintiffs' Memorandum in Opposition to Defendants Quadrangle and Huber's Motion to Dismiss ("Opposition"), Doc. No. 23, p. 4). Rather, Plaintiffs assert that proving what is owed under the employment, retention and bonus agreements is a matter of proof, not pleading. (Id.).

"[A] guarantor is not liable under a contract if the principal is not liable." Grand Inv. Corp. v. Connaughton, Boyd & Kenter, P.C., 119 S.W.3d 101, 115 (Mo. Ct. App. 2003) (citing Stifel Estate Co. v. Cella, 220 Mo. App. 657, 291 S.W. 515, 519 (Mo. Ct. App. 1927)). To state a claim for liability under a guaranty, the plaintiff must allege the amount of indebtedness incurred. ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp., No. 59652, 1992 Mo. App. LEXIS 700, at *5 (Mo. Ct. App. Apr. 21, 1992).

Plaintiffs pled the bankruptcy as part of their contract claim. (Compl., ¶¶33, 52, 71)("Quadrangle has breached its contract with Plaintiff by failing, refusing and neglecting to pay him money owed under and pursuant to his Employment Agreement and Retention Bonus Agreement, even though Quadrangle placed Holdings into bankruptcy and knew that Plaintiff was not paid what had been contractually promised."). As noted above, only the bankruptcy court, during the court of the bankruptcy proceedings for Holdings, could have determined the existence and amount of the alleged debt of Holdings to Plaintiffs, which it did not do. The Court finds that it does not have jurisdiction to make that determination. Therefore, Plaintiffs cannot plead the amount of the

underlying debt and their guaranty claim fails. Accordingly, Defendants' motion to dismiss Plaintiffs' breach of contract claim is granted.

C. Common Law Fraud (Counts III, VI, and IX)

Defendants Quadrangle and Huber assert that Plaintiffs' claims for common law fraud fail as a matter of law because they do not plead with particularity as to time, place, contents and circumstances of the fraudulent representations as required under Fed.R.Civ.P. 9(b). In Plaintiffs' response, they refer to several allegations that they claim satisfy the pleading requirements under Fed.R.Civ.P. 9(b). (Opposition, p. 5). These allegations, however, were from a prior, unfiled draft of the Complaint. (Plaintiffs' Sur-reply in Opposition to Motion of Defendants Quadrangle and Huber to Dismiss, Doc. No. 28, p. 7).[11] Accordingly, the Court allows Plaintiffs leave to file an amended complaint that includes their specific fraud allegations.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Formula Telecom, Inc.'s Motion to Dismiss Counts I, IV, and VII (Doc. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss of Defendants Michael Huber and Quadrangle Group (Doc. No. 19) is **GRANTED**. Defendants' Motion to Dismiss Plaintiffs' breach of contract claim is granted. Defendants' Motion to Dismiss Plaintiffs' fraud claim is granted, but Plaintiffs shall file an amended complaint within fourteen (14) days of the date of this order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for an Asset Freezing Preliminary Injunction to Prohibit Removal of Formula Telecom's Assets from the United States (Doc. No. 17) is **DENIED**.

---

[11]The Court grants Plaintiffs' Motion to File a Sur-reply (Doc. No. 29).

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Sur-reply (Doc. No. 29) is **GRANTED**.

Dated this 15th day of February, 2011.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE